**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BETTY WIDRIG | ) | CASE NO. |
| 97 Shade River Rd. | ) | |
| Patriot, OH 45658, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES AND** |
| | ) | **INJUNCTIVE RELIEF** |
| CHARTER FOODS, INC. | ) | |
| d/b/a KFC | ) | **JURY DEMAND ENDORSED HEREIN** |
| 120 N. Jackson Street | ) | |
| Oak Hill, Ohio 45656 | ) | |
| | ) | |
| **Serve Also:** | ) | |
| CHARTER FOODS, INC. | ) | |
| c/o Corporation Service Company | ) | |
| 3366 Riverside Drive, Suite 103 | ) | |
| Upper Arlington, Ohio 43221 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Betty Widrig, by and through undersigned counsel, makes her Complaint against

Defendant Charger Foods, Inc. d/b/a KFC ("KFC") and states and avers the following:

## PARTIES AND VENUE

1. Widrig is a resident of the community of Patriot, Gallia County, state of Ohio.

2. At all times herein, Widrig was acting in the course and scope of her employment.

3. KFC is a foreign corporation that does business at 120 N. Jackson St, Oak Hill, Jackson

   County, Ohio 45656 ("Oak Hill Location").

4. KFC is a foreign corporation incorporated in the state of Tennessee.

5. KFC's principal place of business is located in Morristown, Tennessee.

6. For the purpose of 28 U.S.C. § 1332, KFC is a citizen of Tennessee.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

8. All material events alleged in this Complaint occurred in Jackson County, Ohio.

9. This Court has jurisdiction over Widrig's state law claims pursuant to 28 U.S.C. § 1332.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

11. In or around April 2020, Widrig began working at the Oak Hill Location.

12. KFC initially hired Widrig as a team member.

13. In or around May 2020, Widrig was promoted to manager.

14. On or about the first week of November 2020, Widrig observed KFC employees Kaci Bentley, Ryan Lambert, Michael Frasier, and Aaron Last Name Unknown ("Aaron LNU") smoking marijuana at work ("Marijuana Smoking Incident.")

15. Bentley worked at the Oak Hill Location as a manager.

16. Lambert worked at the Oak Hill Location as a manager.

17. Frasier worked at the Oak Hill Location as a cook.

18. Aaron LNU worked at the Oak Hill Location.

19. Marijuana is a controlled substance in Ohio.

20. Ohio has a strong public policy in R.C. 3719.01(O) that defines marijuana as a controlled substance.

21. Ohio has a strong public policy against the use, possession, and distribution of marijuana, which is embodied in R.C. 2925.11(C)(3).

22. The use, possession, and distribution of marijuana is prohibited in Ohio.

23. Using marijuana in Ohio is against the law.

2

24. Possessing marijuana in Ohio is against the law.

25. Distributing marijuana in Ohio is against the law.

26. Smoking marijuana in Ohio is against the law.

27. Distributing marijuana is a felony in the state of Ohio.

28. Employees' using marijuana while working on the clock at KFC is against the law.

29. Employees' possessing marijuana while working on the clock at KFC is against the law.

30. Employees' distributing marijuana while working on the clock at KFC is against the law.

31. Employees' smoking marijuana while working on the clock at KFC is against the law.

32. Employees' smoking marijuana while working on the clock at KFC is against KFC policies.

33. Employees' use of drugs at work created an unsafe environment for employees and frequenters.

34. Widrig immediately addressed the employees involved in the Marijuana Smoking Incident.

35. Widrig corrected the conduct of the employees involved in the Marijuana Smoking Incident by telling them that they are not permitted to smoke marijuana at work.

36. KFC has a policy requiring employees to report illegal activities taking place at KFC.

37. In or about November 2020, Widrig immediately contacted General Manager Amanda McFann and told her about the Marijuana Smoking Incident ("Report Of Marijuana Smoking Incident.")

38. KFC has a policy to investigate reports of illegal activities taking place at KFC.

39. Widrig's Report Of Marijuana Smoking Incident was a report of an illegal activity that KFC should have investigated.

40. An investigation should include interviewing the complainant.

41. An investigation should include interviewing the subject(s) of the complaint.

3

42. An investigation should include interviewing witnesses of the reported complaint.

43. An investigation should include getting a written statement from the complainant.

44. An investigation should include getting a written statement from the subject(s) of the reported complaint.

45. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Widrig.

46. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Widrig.

47. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Bentley.

48. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Bentley.

49. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Lambert.

50. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Lambert.

51. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Frasier.

52. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Frasier.

53. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Aaron LNU.

54. In response to Widrig's Report Of Marijuana Smoking Incident, Defendant did not interview Aaron LNU.

55. Defendant's failure to investigate Widrig's Report Of Marijuana Smoking Incident was against KFC policies and procedures.

56. By not disciplining Bentley, Defendant allowed Bentley's conduct to continue.

57. By not disciplining Lambert, Defendant allowed Lambert's conduct to continue.

58. By not disciplining Frasier, Defendant allowed Frasier's conduct to continue.

59. By not disciplining Aaron LNU, Defendant allowed Aaron LNU's conduct to continue.

60. On or about November 11, 2020, McFann told Widrig that her KFC employment was terminated.

61. Defendant's Termination of Widrig was in retaliation for Widrig opposing employees' using a controlled substance, marijuana, while working on the clock at KFC.

62. Defendant's Termination of Widrig was in violation of Ohio's public policy against illegal use, possession, or distribution of marijuana, a controlled substance.

63. Defendant is liable to Widrig for any and all damages resulting from the wrongful termination of Widrig in violation of public policy.

## COUNT I: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

64. Widrig restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

65. A clear public policy exists and is manifested in Ohio and federal statutes and/or administrative regulations, including R.C. 2925.11(C)(3) and R.C. 3719.01(O), and/or in the common law, against the use, possession, and distribution of marijuana.

66. A clear public policy exists and is manifested in Ohio and federal statutes and/or administrative regulations, including R.C. 4101.11 and 4101.12, and/or in the common law, requiring employers to furnish a safe environment for employees and frequenters.

67. Specifically, in *Blackburn v. American Dental Centers,* 2011-Ohio-5971 (10th Dist. 2011), the appellate court found that evidence that employees were terminated for reporting unsafe work conditions and practices could support a claim of wrongful discharge in violation of public policy.

68. Defendant's termination of Widrig jeopardizes these public policies.

69. Defendant's termination of Widrig was motivated by conduct related to these public policies.

70. Defendant had no overriding business justification for terminating Widrig.

71. As a direct and proximate result of Defendant's conduct, Widrig has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Widrig respectfully requests that this Honorable Court grant the following relief:

(a)     Issue an order requiring Defendant retroactively to restore Widrig to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b)     An award against Defendant of compensatory and monetary damages to compensate Widrig for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c)     An award of punitive damages against Defendant in an amount in excess of $25,000;

(d)     An award of reasonable attorneys' fees and non-taxable costs for Widrig's claims as allowable under law;

(e)     An award of the taxable costs of this action; and

(f)     An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: paul.filippelli@spitzlawfirm.com

*Attorney for Plaintiff Betty Widrig*

**JURY DEMAND**

Plaintiff, Betty Widrig, demands a trial by jury by the maximum number of jurors permitted.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**

*Attorney for Plaintiff Betty Widrig*

7